OPINION *Page 2 
{¶ 1} Kurtis Kitzmiller, a minor, appeals a felony domestic violence adjudication and commitment. Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 25, 2006 appellant was charged by complaint in the Licking County Juvenile Court with domestic violence, a felony of the fourth degree if committed by an adult. The case was charged as a felony-level offense under R.C. 2919.25 because appellant has two prior domestic violence adjudications in his juvenile court history. The complaint filed against appellant stated:
 {¶ 3} "On or about August 25, 2006, in the County of Licking, State of Ohio, Kurtis Kitzmiller knowingly caused or attempted to cause physical harm to a family or household member, to wit: Kurtis shoved his mother [Lori Cartt] in the chest and caused her to fall backwards over a chair. Kurtis Kitzmiller has previously been adjudicated a delinquent child for commission of a Domestic Violence offense in Hocking County Juvenile Court Case Nos. 20220470 and 20220471. The above behavior is in violation of Section 2919.25(A) of the Ohio Revised Code as applied to adults, and in violation of Section 2152.02(F) of the Ohio Revised Code as made applicable to juvenile".
 {¶ 4} On August 25, 2006 the appellant was arraigned on the charge. The court appointed counsel for appellant and continued the arraignment. During the arraignment appellant admitted that if he were given a drug test it would test positive for marijuana. On September 12, 2006 appellant appeared with counsel and entered a plea of "not true" to the charge. Appellant was released from detention and returned to the custody of his mother pending trial. *Page 3 
 {¶ 5} On October 18, 2006 appellant returned to court on the State's motion to modify temporary orders. The State alleged that appellant had tested positive for THC upon his first drug test since being released from detention. The trial court ordered appellant to remain in detention pending the adjudicatory hearing.
 {¶ 6} On October 25, 2006 the trial court granted the State's motion to continue the adjudicatory hearing due to the unavailability of one of the State's witnesses. The court ordered appellant remain in detention pending the adjudicatory hearing.
 {¶ 7} On October 31, 2006 the adjudicatory hearing commenced, and the following evidence was presented.
 {¶ 8} Two days prior to Ms. Cartt, alleging appellant assaulted her, Ms. Cartt was in a life threatening car accident. (Adj.T., October 31, 2006 at 13-16). Because Ms. Cartt received heavy doses of medication while in the hospital and after returning home from the hospital, Ms. Cartt had almost no recollection of what occurred on August 25, 2006 and for two weeks following her accident. (Id. at 16-19). Ms. Cartt has no independent recollection of appellant shoving her or causing her to fall. (Id. at 8-19). Because of Ms. Cartt's limited memory of what occurred on August 25, 2006, and in order to prove the elements of domestic violence against appellant, the State had Ms. Cartt read her written statement to police into the record. In her written statement, Ms. Cartt stated, "He [Kurtis] pushed me in my chest and knocked me backwards. I fell over the chair and table." (Adj.T. at 10). Reading the statement she wrote for the police did not refresh Ms. Cartt's recollection of what occurred on August 25, 2006. (Adj.T. at 17-19). The deputy sheriff testified that upon his arrival at her residence on August 25, 2006, Ms. Cartt told him that Kurtis shoved her down. (Adj.T. at 23). *Page 4 
 {¶ 9} During appellant's testimony, appellant stated that when he and his mother were arguing he was at the top of the stairs and he started to slide, so he reached out and grabbed his mom's arms to keep from falling down the stairs. (Adj.T. at 35).
 {¶ 10} On October 31, 2006, appellant was adjudicated delinquent of one count of domestic violence. On that same date, appellant was committed to the Ohio Department of Youth Services for a minimum period of six months and a maximum period until age twenty-one.
 {¶ 11} It is from the trial court's October 31, 2006 Judgment Entry that appellant appeals raising the following five assignments of error:
 {¶ 12} "I. THE LICKING COUNTY JUVENILE COURT VIOLATED R.C. 2919.25, R.C. 2901.08, AND KURTIS KITZMILLER'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION, WHEN IT ADJUDICATED HIM DELINQUENT FOR DOMESTIC VIOLENCE, A FELONY OF THE FOURTH DEGREE IF COMMITTED BY AN ADULT.
 {¶ 13} "II. KURTIS KITZMILLER'S RIGHT TO CONFRONTATION WAS VIOLATED WHEN THE TRIAL COURT ALLOWED THE STATE TO INTRODUCE TESTIMONIAL HEARSAY STATEMENTS IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHO CONSTITUTION, AND CRAWFORD V. WASHINGTON (2004), 541 U.S. 36. *Page 5 
 {¶ 14} "III. THE TRIAL COURT VIOLATED KURTIS KITZMILLER'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND JUV. R. 29(E) (4) WHEN IT ADJUDICATED HIM DELINQUENT OF DOMESTIC VIOLENCE ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE.
 {¶ 15} "IV. THE TRIAL COURT VIOLATED KURTIS KITZMILLER'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF DOMESTIC VIOLENCE, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} "V. KURTIS KITZMILLER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10
AND 16 OF THE OHIO CONSTITUTION."
 I. {¶ 17} Under this assignment of error, appellant contends that the juvenile court erred by applying the felony enhancement provisions in R.C. 2919.25 to a juvenile charged with domestic violence in juvenile court. In this regard, R.C. 2919.25 provides that: *Page 6 
 {¶ 18} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 19} "* * *
 {¶ 20} "(3) Except as otherwise provided in division (D) (4) of this section, if the offender previously has pleaded guilty to or been convicted of domestic violence, * * * a violation of division (A) or (B) of this section is a felony of the fourth degree * * *
 {¶ 21} "(4) If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D) (3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree * * *."
 {¶ 22} Appellant argues that juveniles should not be subject to felony enhancement based on a prior adjudication of delinquency because juveniles are not charged with "crimes," are not "convicted," and do not face "sentences."
 {¶ 23} At the outset we note that it is not necessarily important, in the context of the delinquency adjudication itself, whether the juvenile's conduct would be a felony or a misdemeanor if his acts were committed by an adult. The Revised Code defines a "delinquent child" to include "[a]ny child * * * who violates any law of this state * * * that would be an offense if committed by an adult." R.C. 2152.02(F) (1) (emphasis added); see also R.C. § 2151.011(B) (12). "Therefore, it is not relevant to the finding of delinquency whether the actions of [a juvenile] would have constituted a felony or a misdemeanor if committed by an adult." In re Russell (1984), 12 Ohio St.3d 304. Because appellant's violation of "any law" allowed the trial court to adjudicate him *Page 7 
delinquent, we find no prejudice resulting from the trial court designating his conduct a fourth-degree felony during the adjudicatory phase. Regardless of whether appellant's actions constituted felony or misdemeanor-level domestic violence, the trial court did not err in adjudicating him delinquent. In re M.A.L., Miami App. No. 06-CA-36, 2007-Ohio-2426 at ¶ 11.
 {¶ 24} The Ohio Supreme Court recognized in Russell, however, that the offense level of a juvenile's conduct is relevant during the dispositional phase. Id. at 304. One of the statutes discussed inRussell was then-existing R.C. 2151.355(A) (4), which authorized commitment "[i]f the child was adjudicated delinquent by reason of having committed an act that would be a felony of the third or fourth degree if committed by an adult [.]" This statute is much like the current R.C. 2152.16(A), which authorizes commitment if a juvenile is adjudicated delinquent for committing an act that would be a felony if committed by an adult. In re M.A.L., supra at ¶ 16. The Court inRussell explained:
 {¶ 25} "It is logical to presume that the legislature intended the juvenile court to have a greater number of choices regarding dispositions for juveniles with continuing difficulties with the law. The construction urged by appellant, that a prior theft adjudication is not a prior theft conviction, would relegate the court to the use of the same dispositions which had been inadequate in addressing previous adjudications of delinquency for theft offenses. This would be inconsistent with the express goal of rehabilitating juveniles. R.C.2151.01(B).
 {¶ 26} "Accordingly, we conclude that a prior adjudication of delinquency predicated on a theft offense constitutes a previous conviction of a theft offense under *Page 8 
R.C. 2913.02 for the purpose of determining disposition".12 Ohio St.3d at 305, 466 N.E.2d at 554.
 {¶ 27} In re Fogle, Stark App. No. 2006CA00131, 2007-Ohio-553, this Court held that R.C. 2901.08(A) applies to juveniles and adults. R.C.2901.08(A), provides:
 {¶ 28} "If a person is alleged to have committed an offense and if the person previously has been adjudicated a delinquent child * * * for a violation of a law or ordinance, the adjudication as a delinquent child * * * is a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed upon the person [.]"
 {¶ 29} In the lead opinion, Judge Boggins determined that the statute allows a court to enhance a juvenile's current offense level by treating prior adjudications as convictions. Judge Hoffman filed a dissent in which he opined that R.C. 2901.08(A) only allows prior juvenile adjudications to be considered when determining the proper charge for an adult. Based on the terminology in the statute, Judge Hoffman reasoned that it does not apply to juveniles who have prior delinquency adjudications. We are now persuaded by Judge Hoffman's view that R.C.2901.08(A) has no applicability in juvenile court. However, in deference to Judge Boggins, we would note that the Revised Code does provide a juvenile counter-part to R.C. 2901.08. R.C. 2152.16(C) provides:
 {¶ 30} "If a child is adjudicated a delinquent child, at the dispositional hearing and prior to making any disposition pursuant to this section, the court shall determine whether the delinquent child previously has been adjudicated a delinquent child for a violation of a law or ordinance. If the delinquent child previously has beenadjudicated a *Page 9 delinquent child for a violation of a law or ordinance, the court, forpurposes of entering an order of disposition of the delinquent childunder this section, shall consider the previous delinquent childadjudication as a conviction of a violation of the law or ordinance indetermining the degree of the offense the current act would be had itbeen committed by an adult. * * *" (Emphasis added).
 {¶ 31} The foregoing language allows a juvenile court, during the dispositional phase, to treat prior adjudications as convictions for purposes of determining the degree of offense the juvenile's current act would be if committed by an adult. In re M.A.L., supra at ¶ 13-14.
 {¶ 32} In the present case, the State introduced into evidence before the trial court a certified copy of a Judgment Entry from the Hocking County, Ohio, Court of Common Pleas, Juvenile Division, In the Matter ofKurtis Kitzmiller, Case No. DL20220470, in which the appellant was adjudicated delinquent on two (2) counts of Domestic Violence.[1]
 {¶ 33} That Judgment Entry contains the following finding by the Hocking County Court of Common Pleas:
 {¶ 34} "Withdraws former plea and enters a plea of ADMIT, Court accepts said plea.
 {¶ 35} "Admit allegations. Upon being advised of their right to counsel and of the potential consequences in the event the allegations set forth in the complaint were established, the juvenile and parent waived counsel voluntarily, knowingly and *Page 10 
intelligently by the alleged child. The Court accepted the admission and found the child to be a (n) DELINQENT CHILD * * *" [State's Exhibit 2]. Appellant was placed on probation. Id. As no appeal was taken from the Hocking County case, appellant cannot collaterally attack the findings of the Hocking County Court of Common Pleas in the case at bar.
 {¶ 36} R.C. 2152.16(C) authorized the trial court to treat those adjudications as convictions during the dispositional phase for purposes of applying the domestic violence statute's felony-enhancement provision. The disposition transcript and appellant's commitment to the Ohio Department of Youth Services make clear that the trial court in fact did treat the prior adjudications as convictions and determined that his current conduct would constitute a fourth-degree felony if committed by an adult. Because R.C. 2152.16(C) expressly authorized the trial court to make this determination, we find no error.
 {¶ 37} Appellant's first assignment of error is overruled.
 II. {¶ 38} In his second assignment of error, appellant argues the trial court allowance of testimony concerning the out-of-court statements of appellant's mother, Lori Cartt, who was the victim of the domestic violence deprived appellant of his constitutional right to confront witnesses guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, 158 L.Ed.2d 177. We disagree.
 {¶ 39} In the case at bar, two days prior to Ms. Cartt alleging appellant assaulted her, Ms. Cartt was in a life threatening car accident. (Adj.T., October 31, 2006 at 13-16). *Page 11 
Because Ms. Cartt received heavy doses of medication while in the hospital and after returning home from the hospital, Ms. Cartt had almost no recollection of what occurred on August 25, 2006 and for two weeks following her accident. (Id. at 16-19). Ms. Cartt has no independent recollection of appellant shoving her or causing her to fall. (Id. at 8-19). Because of Ms. Cartt's limited memory of what occurred on August 25, 2006, and in order to prove the elements of domestic violence against appellant, the State had Ms. Cartt read her written statement to police into the record. In her written statement, Ms. Cartt stated, "He [Kurtis] pushed me in my chest and knocked me backwards. I fell over the chair and table." (Adj.T. at 10). Reading the statement she wrote for the police did not refresh Ms. Cartt's recollection of what occurred on August 25, 2006. (Adj.T. at 17-19). The deputy sheriff testified that Ms. Cartt told him that Kurtis shoved her down. (Adj.T. at 23). Furthermore, the State elicited testimony from the sheriff's deputy as to what Ms. Cartt told him upon his arrival at her residence on August 25, 2006.
 {¶ 40} In Crawford, the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. Crawford thus involved the admissibility under the Confrontation Clause of recorded testimonial statements of a person who did not testify at the trial. The holding in Crawford was that such statements, regardless of their reliability, are not admissible unless the defendant was able to cross-examine their maker. In the present case Ms. Cartt did testify and was cross-examined. Appellant argues, however, that because Ms. Cartt was unable to recall the incident or making the statement to the police, she should be viewed as an *Page 12 
"unavailable" witness, whom the appellant could not effectively cross-examine. In substance, this is an argument that the witness should be treated as if she had not, in fact, testified or been cross-examined. However, the Court's decision in Crawford neither overruled nor called into question its two earlier decisions that addressed and resolved this issue: Delaware v. Fensterer( 1985), 474 U.S. 15, 106 S.Ct. 292,88 L.Ed.2d 15 and United States v. Owens(1988), 484 U.S. 554,108 S.Ct. 838.
 {¶ 41} Owens involved an adult victim of a severe beating, who suffered memory loss stemming from his head injuries and testified at trial. While hospitalized, he had identified Owens as his assailant, which identification was admitted into evidence. During the victim's cross-examination, he was unable to recall details of the attack and the identification. Id. at 556, 108 S.Ct. 838. The Ninth Circuit held that, under the circumstances, the introduction of the victim's testimony violated the Confrontation Clause. The Supreme Court reversed, ruling that "the Confrontation Clause guarantees only `an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"Id. at 559, 108 S.Ct. 838 (quoting Kentucky v. Stincer, 482 U.S. 730, 739,107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) and Delaware v. Fensterer,474 U.S. 15, 19-20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)) (emphasis in original). In Fensterer the Court held that the Confrontation Clause was not violated where an expert witness who testified as to his opinion could not recollect the basis upon which he had formed that opinion. InFensterer, the Court explained that:
 {¶ 42} "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by *Page 13 
forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony".474 U.S. at 21-22, 106 S.Ct. 292.
 {¶ 43} It is true that in Owens the witness at least recalled having identified the defendant. 484 U.S. at 556, 108 S.Ct. at 840. But the Court did not restrict its reasoning to such situations. Instead, the Court "agree[d] with the answer suggested" in "Justice Harlan's scholarly concurrence" in California v. Green (1970), 399 U.S. 149, 188,90 S.Ct. 1930, 1950, 26 L.Ed.2d 489 that "a witness' inability to `recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not haveSixth Amendment consequence.'" 484 U.S. at 558, 108 S.Ct. at 841. The accused has been "confronted with the witnesses against him," as theSixth Amendment demands, so long as the prosecution produces the witnesses and the witnesses answer defense questions. "[Successful cross-examination is not the constitutional guarantee." 484 U.S. at 560, 108 S.Ct. at 843. When a witness has forgotten the basis for and the giving of testimony under oath in an earlier proceeding and that testimony is then introduced into evidence, defense questioning, though impaired, is not futile for the reasons given in Owens. It is still possible to bring out on cross-examination the "witness' bias, his lack of care and attentiveness . . . and even (what is often a prime objective of cross-examination) the very fact that he has a bad memory." Id. at 559,108 S.Ct. at 842 (citation omitted). United States v. Milton (DC Cir., 1993), 8 F.3d 39, 47. *Page 14 
 {¶ 44} We conclude that a witness' claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the confrontation clause underCrawford, so long as the witness appears at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination. In the case at bar, appellant had the opportunity to cross-examine the forgetful witness. The trier of fact was able to assess both the forgetful witness and the testifying officer's demeanor and credibility. Appellant brought out on cross-examination the "witness' bias, [her] lack of care and attentiveness . . . and even (what is often a prime objective of cross-examination) the very fact that [she] has a bad memory." California v. Green, supra at 559,108 S.Ct. at 842 (citation omitted).
 {¶ 45} Appellant's second assignment of error is overruled.
 III. IV. {¶ 46} In his third assignment of error, appellant maintains that his adjudication is against the sufficiency of the evidence. In his fourth assignment of error appellant argues that his adjudication is against the manifest weight of the evidence. We disagree.
 {¶ 47} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, State v. Jenks (1991), 61 Ohio St. 3d 259. *Page 15 
 {¶ 48} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 49} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 50} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 51} In the case at bar, appellant was adjudicated delinquent on the basis of domestic violence. In this regard, R.C. 2919.25 provides that:
 {¶ 52} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 53} R.C. 2901.01 states, in relevant part: "(A). As used in the Revised Code: *Page 16 
 {¶ 54} "(3) `Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration".
 {¶ 55} This court has previously held that "no showing of actual trauma or injury is needed to satisfy the `physical harm' element of assault. The qualification of the physical contact as `physical harm" is a matter to be determined by the trier of fact". State v. Robinson
(Sept. 30, 1985), 5th Dist. No. CA-6649; State v.Dansby (June 15, 1988), 5th Dist. No. 87AP090068. See, also State v. Perkins (March 27, 1998), 11th District No. 96-P-0221("When there is no tangible, physical injury such as a bruise or cut, it becomes the province of the jury to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event"); State v. Bowers, 11th Dist. No. 2002-A-0010, 2002-Ohio-6913 at ¶ 15 ("In the instant case, the victim attested that appellant tackled him without his permission causing him to fall to the ground. The victim stated that he was not injured or bruised as a result of the incident; however, he attested that he experienced pain in his stomach and side when he was tackled. Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that appellant inflicted physical harm on Boggs, as provided in R.C. 2901.22, and knowingly caused Boggs physical harm, as provided in R.C. 2901.01(A)(3)") .
 {¶ 56} In the case at bar the trial court received into evidence the written statement of appellant's mother. In her written statement, Ms. Cartt stated, "He [Kurtis] pushed me in my chest and knocked me backwards. I fell over the chair and table." (Adj.T. at 10). The trial court also heard testimony from Deputy Daniel Loper of the *Page 17 
Licking County Sheriffs Office that upon his arrival at the scene Ms. Cartt informed him that the appellant had "shoved her down and spit on her . . ." (Adj. T. at 23).
 {¶ 57} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had caused physical harm to a family or household member.
 {¶ 58} We hold, therefore, that the state met its burden of production regarding cause, or attempt to cause physical harm to a family or household member as required by R.C. 2919.25 and, accordingly, there was sufficient evidence to support appellant's adjudication.
 {¶ 59} Although appellant cross-examined the witnesses and argued that he grabbed his mother to prevent himself from falling down the stairs, and further that his mother was unable to recall at the time of trial the circumstances surrounding her encounter with appellant, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 60} Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record. Miller v. Miller (1988),37 Ohio St. 3d 71.
 {¶ 61} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility *Page 18 
of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 62} The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill
(1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 63} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant had committed acts which if committed by an adult would be of the crime of domestic violence. *Page 19 
 {¶ 64} Accordingly, appellant's adjudication is not against the sufficiency or the manifest weight of the evidence.
 {¶ 65} Appellant's third and fourth assignments of error are overruled.
 V. {¶ 66} In his fifth assignment of error, appellant argues he was denied effective assistance of counsel. We disagree.
 {¶ 67} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 68} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 69} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A *Page 20 
reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 70} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 71} Essentially, appellant argues that his trial attorney's failures to raise in the trial court the same issues and arguments that he now presents on appeal rendered his performance ineffective. Appellant offers no additional grounds not addressed in the previous assignments of error.
 {¶ 72} Since we have found no grounds for reversal of his convictions in any of appellant's assignments of error, we obviously do not consider his counsel ineffective in this regard.
 {¶ 73} Accordingly, we find no prejudice to appellant as a result of trial counsel's actions in this case.
 {¶ 74} Appellant's fifth assignment of error is overruled. *Page 21 
 {¶ 75} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.
Gwin, P.J., and Edwards, J., concur; Wise, J., concurs separately
[1] We would note that pursuant to R.C. 2919.25(A) (4) the present offense would be elevated to a felony of the third degree. However, the Complaint in the case at bar classified the offense in appellant's case as a felony of the fourth degree. The trial court adjudicated appellant delinquent of a felony of the fourth degree. Accordingly, we will not disturb the trial court's finding concerning the level of the offense as the dispositional alternatives are the same for either level of felony. See, R.C. 2151.62(A) (1) (e).