The STATE of Ohio, Appellee,

v.

HORAN et al., Appellants.

[Cite as *State v. Horan* (1993), 92 Ohio App.3d 78.]

Court of Appeals of Ohio,
Butler County.

Nos. CA 93–06–133, CA 93–06–134.

Decided Dec. 20, 1993.

*John F. Holcomb,* Butler County Prosecuting Attorney, and *Barbara Schneider,* Assistant Prosecuting Attorney, for appellee.

*J. Randall McClain,* for appellants.

*Per Curiam.*

Defendants-appellants, Nancy Horan and Donna J. Abbott, appeal convictions in the Butler County Court for operating a gambling house.

Horan is the owner of the Millville Tavern. Abbott was an employee of the tavern from October 1992 through February 1993. On February 17, 1993, when Abbott was the only employee present, two undercover officers from the Butler County Sheriff's Department went into the tavern and purchased $20 worth of "tip-tickets," instant pull-tab lottery games, from Abbott. Subsequently, the officers issued Abbott a citation for operating a gambling house under R.C. 2915.03(A)(1). Horan arrived a short time later, identified herself as the owner of the tavern, and attempted to explain that the tickets were being sold on behalf of a charity. The officers also issued Horan a citation for operating a gambling house under R.C. 2915.03(A)(2).

A bench trial commenced on April 28, 1993. The evidence showed that in September 1992, Horan was approached by representatives of the Freedom Road Foundation ("Freedom Road") with a proposal to sell the tip-tickets in exchange for a "rental" payment. Freedom Road is a tax exempt charitable organization whose claimed goal is to provide educational opportunities for underprivileged children. After several meetings with representatives of Freedom Road and several months of contemplation, Horan finally agreed to Freedom Road's proposal. Freedom Road provided Horan with the tip-tickets, as well as signs to display explaining the various payoffs for purchasing a ticket with certain

sequences of numbers and informing patrons that the tickets were sold on behalf of Freedom Road. Horan explained to her employees, including Abbott, how the game was played, and that the tickets were being sold on behalf of a charity.

After hearing the evidence, the trial court found both Horan and Abbott guilty as charged. This appeal followed.

■ Appellants present three assignments of error for review, which we will address out of order. In their second assignment of error, appellants state that the trial court erred in finding Horan guilty of violating R.C. 2915.03(A)(2). They argue that there was insufficient evidence to show Horan acted recklessly. We find this assignment of error to be well taken.

R.C. 2915.03(A)(2) provides that "[n]o person, being the owner or lessee, or having custody, control, or supervision of premises, shall * * * [r]ecklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code."

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

The evidence shows that Horan did not immediately accept Freedom Road's proposal when she was first approached by its representatives in September 1992 because, having been in the bar and restaurant business for approximately sixteen years, she knew of "many schemes and gimmicks and things that go on * * *." Horan talked to other business owners involved in selling tickets for Freedom Road, and they told her that they had had no problems and that "the group was on the up and up as far as they knew." Horan had a second meeting with representatives of Freedom Road in October 1992, when they presented her with a booklet and other information on their organization. They showed her their Internal Revenue Service number indicating that they were a tax-exempt organization and a restraining order that was then in effect against the Ohio Department of Liquor Control prohibiting its agents from interfering with Freedom Road's "promotions of schemes of chance whether conducted on or off a liquor permit premises * * *." Horan took a trusted friend with her to this meeting who was familiar with the bar business, who had friends on the "liquor board" in Columbus, and who did a lot of charitable work. This friend advised her that he felt Freedom Road was legitimate and that they were not a "fly by night group." Horan also learned of court proceedings where other bar owners

had been issued citations for selling the tickets, and the charges had been "thrown out" because "what they were doing was legal."

It is our view that the evidence does not support the conclusion that Horan acted with "heedless indifference to the consequences" or that she "perversely disregarded a known risk." R.C. 2915.03(A)(2) requires the state to show that the defendant recklessly permitted the premises to be used for gambling which violates the provisions of R.C. 2915.02. Horan took many steps to assure herself that the scheme proposed by Freedom Road was legal gambling done on behalf of a charity, see R.C. 2915.02(D), and did not violate Ohio's gambling laws. Horan did not immediately leap at the chance to sell the tickets and receive the rental payments. Instead, she sought further information and considered the matter very carefully for several months, consulting with trusted friends with knowledge of the bar and restaurant business and discussing the matter with other bar owners involved in the program. Furthermore, Horan saw a copy of the restraining order which indicated to her that the gambling scheme conducted on behalf of Freedom Road was legal.

Accordingly, we conclude that the state did not present sufficient evidence which could convince the average mind beyond a reasonable doubt that Horan acted recklessly. The state failed to prove an essential element of the offense, *State v. Wac* (1981), 68 Ohio St.2d 84, 87, 22 O.O.3d 299, 301, 428 N.E.2d 428, 431–432, and therefore the evidence is insufficient to support the conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Appellants' second assignment of error is sustained and Horan's conviction is reversed.

▮ In their third assignment of error, appellants state that the trial court erred in finding Abbott guilty of violating R.C. 2915.03(A)(1). Appellants argue that the evidence does not show that the scheme of chance being conducted at the tavern was designed to produce income for Abbott and that she played no role in bringing the tickets to the tavern. We find this assignment of error to be well taken.

R.C. 2915.03(A)(1) provides that "[n]o person, being the owner or lessee, or having custody, control, or supervision of premises, shall * * * [u]se or occupy such premises for gambling in violation of section 2915.02 of the Revised Code[.]" This section imposes strict liability for operating a gambling house. *Wac, supra,* at paragraph two of the syllabus.

R.C. 2915.02(A)(2) states that no person shall "[e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]" R.C. 2915.01(E) defines a "scheme or game of chance conducted for profit" as "any scheme or game of chance *designed to produce*

*income for the person who conducts or operates the scheme or game of chance* * * *." (Emphasis *sic.*) R.C. 2915.02 provides punishment for one who operates a lottery "for his own profit." *State v. Polozzi* (1975), 44 Ohio Misc. 34, 38, 73 O.O.2d 104, 106–107, 336 N.E.2d 471, 474. The gambling statutes are aimed at suppressing the business of gambling for profit. Committee Comment to R.C. 2915.02. Profit is a necessary element of a gambling statute; without it, there can be no crime. *Polozzi, supra,* at 38, 73 O.O.2d at 106–107, 336 N.E.2d at 474.

At trial, the state argued that Abbott conducted or operated a scheme of chance. However, the record contains no evidence that the scheme of chance was designed to produce income for her or that she benefited in any way from the sale of the tip-tickets. Abbott had no control over whether the tip-tickets were sold at the tavern, and she knew only that the proceeds of the sales were to go to charity. Thus, there is no evidence that Abbott, as operator of the game, conducted the scheme of chance for profit, and therefore the evidence is insufficient to support the conviction. See *Jenks, supra.*

We do not believe the gambling statutes are intended to reach an employee of a business whose primary duties are to conduct business other than the gambling, who has no control over whether gambling occurs or not, who acts at the direction of her employer, and who receives no benefit. Accord *State v. Davis* (1967), 198 Kan. 509, 426 P.2d 143; *People v. Underhill* (1944), 267 A.D. 833, 45 N.Y.S.2d 847; *People v. Pack* (1942), 179 Misc. 316, 39 N.Y.S.2d 302. "An employee who has no control over the premises where the gambling is carried on or of the business conducted therein is not punishable." *Pack, supra,* 179 Misc. at 321, 39 N.Y.S.2d at 307. Accordingly, we sustain appellants' third assignment of error and reverse Abbott's conviction.

In their first assignment of error, appellants state that the trial court erred in finding that both Horan and Abbott violated R.C. 2915.03 because the tip-tickets sold at the tavern were legal schemes of chance falling within specific exceptions for charitable organizations to the general prohibition against gambling. However, since we have already determined that both convictions must be reversed on other grounds, we find this assignment of error to be moot, and we decline to address it.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and appellants are discharged.

*Judgment reversed*
*and appellants discharged.*

KOEHLER, P.J., YOUNG and WALSH, JJ., concur.