OPINION
{¶ 1} Defendant-appellant, York Bryant, appeals his conviction in the Warren County Court of Common Pleas on one fifth-degree felony count of operating a gambling house, in violation of R.C. 2915.03(A)(2). We affirm.
 {¶ 2} Appellant is the owner of Papa's Restaurant located in Morrow, Ohio. There are four electronic game machines located throughout the restaurant for patrons to play, including "Eldorado," "Magical Odds," "Cherry 96," and "Dwarf's Den." In November 2005, the Ohio *Page 2 
Department of Public Safety ("ODPS") received an anonymous complaint alleging liquor and gambling violations at Papa's Restaurant, and proceeded to investigate the same.
 {¶ 3} Agents Robert Boldin and Michelle Thourot went to the establishment on the evening of November 3, 2005, during which Agent Boldin played one of the machines in question. Agent Boldin inserted $5 into the "Cherry 96" machine, for which he received 100 credits. After playing the game for a short time, Agent Boldin contacted the waitress on duty, Candace Stephens, and told her he wanted to "cash out." Stephens approached the machine, verified the number of credits indicated on the screen of the machine, and reset the machine to zero credits. Stephens then went to the cash register, retrieved a guest check pad from a drawer beneath the cash register, wrote down Agent's Boldin's first name, and handed him $5. The agents took no further action that night before leaving the establishment.
 {¶ 4} After determining the restaurant had not violated any liquor laws, ODPS contacted the Warren County Sherriff's Office to investigate the game machines. On November 10, 2005, Agent Boldin returned to the restaurant with Deputy Eric Johnson, during which Agent Boldin again played the Cherry 96 machine. He inserted $20 into the machine and received 400 credits. After playing the game for a short time, Agent Boldin approached Stephens and asked to "cash out." Stephens verified the number of credits by looking at the screen of the machine, and reset the machine to zero. She then wrote his first name, "Bob," along with "Cherry" and "10," on a guest check, and handed him $10.
 {¶ 5} A search warrant was subsequently obtained, and executed by the Warren County Sherriff's Office later that night. When officers arrived to execute the search warrant, appellant was found kneeling next to one of the game machines with his hands inside of the machine. During their search, officers seized approximately $84 from the four machines, a number of guest checks, and a total of $234 from the drawer beneath the cash register.
 {¶ 6} Appellant was later charged with two counts of operating a gambling house in *Page 3 
violation of R.C. 2915.03(A)(2). Following a jury trial, appellant was convicted of one of the charges and subsequently sentenced to three years of community control, 30 days of community service, and fined $1,500.
 {¶ 7} Appellant appeals his conviction, advancing three assignments of error. For ease of discussion, appellant's assignments of error will be addressed out of order.
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE TRIAL COURT ERRED BY FAILING TO GRANT [APPELLANT'S] MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(A) OF THE OHIO RULES OF CRIMINAL PROCEDURE."
 {¶ 10} In his second assignment of error, appellant argues the trial court erred in denying his Crim. R. 29 motion for acquittal because insufficient evidence was presented to prove he recklessly permitted the restaurant to be used for gambling. Specifically, appellant argues the state failed to prove Stephens "knowingly paid out winnings on the machines." He also contends the state failed to prove that he told his employees to pay out winnings or "acquiesced in such behavior." Accordingly, appellant argues a conclusion that he violated R.C. 2915.03(A)(2) could only be based upon an inference that Stephens was following his orders in paying out winnings on the machines, which in turn, could only be based upon an inference that Stephens was paying out winnings on the machines. Appellant contends such "inference stacking" is impermissible.
 {¶ 11} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298, ¶ 33; State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Our review of a court's denial of a motion for acquittal under Crim. R. 29 is governed by the same standard as that used for determining whether a verdict is supported by sufficient *Page 4 
evidence. State v. Haney, Clermont App. No. CA2005-07-068,2006-Ohio-3899, ¶ 14. In reviewing a record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks. Further, in considering the sufficiency of the evidence, a reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. See, also, State v. White, Franklin App. No. 06AP-607, 2007-Ohio-3217, ¶ 26. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. State v. Benge,75 Ohio St.3d 136, 143, 1996-Ohio-227.
 {¶ 12} It is well-established that both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. State v.Crutchfield, Warren App. No. CA2005-11-121, 2006-Ohio-6549, ¶ 20. "`Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-6046, ¶ 75, quoting State v. Heinish (1990),50 Ohio St.3d 231, 238. A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. State v.Apanovitch (1987), 33 Ohio St.3d 19, 27.
 {¶ 13} In this case, appellant was convicted of operating a gambling house in violation of R.C. 2915.03(A)(2), which provides as follows: "No person, being the owner or lessee, or having custody, control, or supervision of premises, shall * * * [r]ecklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code." "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is *Page 5 
likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C); State v. Horan (1993), 92 Ohio App.3d 78, 80. This court has previously explained that "`recklessness' involves an even lower mental state than `knowingly'" and "does not involve a specific intent." State v. Davis (2001), 145 Ohio App.3d 296, 299, citing State v. Harbert (July 1, 1999), Cuyahoga App. No. 74320,1999 WL 462359, at *4.
 {¶ 14} As an initial matter, contrary to the state's contention, R.C. 2915.03(A)(2) under which appellant was charged in this case has not been found to impose strict liability for operating a gambling house.State v. Wac (1981), 68 Ohio St.2d 84, 86-87. Rather, the Ohio Supreme Court has indicated that only R.C. 2915.03(A)(1) imposes strict liability, as evidenced by the General Assembly's exclusion of the element of recklessness from that section, but inclusion of such element in R.C. 2915.03(A)(2). Id. at 87. Accordingly, the state was required to prove that appellant acted recklessly in permitting the restaurant to be used for gambling in order to convict appellant of the offense in question. This also required the state to prove a gambling violation occurred, i.e., that Stephens knowingly engaged in conduct that facilitated a scheme or game of chance for profit.
 Gambling Violation {¶ 15} The alleged gambling offense at issue in this case is codified under R.C. 2915.02(A)(2), which provides, "no person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]" R.C. 2915.01(D) provides that a "`[g]ame of chance' means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo." R.C. 2915.01(E) defines a "game of chance conducted for profit" as "any game of chance designed to produce income *Page 6 
for the person who conducts or operates the game of chance * * *."
 {¶ 16} Ohio courts have previously determined that electronic game machines such as those at issue in this case constitute "games of chance." See State v. Moose Club No. 1234 (1985), 25 Ohio App.3d 18, 19. See, also, State v. Brown (1996), 116 Ohio App.3d 389, 393 (holding that "where the evidence demonstrates that by placing money into a video slot machine a player can acquire or win, purely by chance, additional playing time on that machine without paying any additional money, thereby gaining added amusement, the state has proved the existence of a `game of chance' as that term is defined in Ohio's gambling statutes.")
 {¶ 17} In addition, Agent Boldin testified at trial concerning his experience in playing one of the subject machines. He testified that on one occasion at the restaurant, he inserted $5 into the Cherry 96 machine, received 100 credits with which to play, and that after playing the game for a short period of time, he asked Stephens to "cash out." Agent Boldin testified that Stephens approached the machine, looked at the screen to verify the number of credits remaining, and reset the machine to zero by pressing a button in the back of the machine. She then retrieved a guest check pad from a drawer beneath the cash register, wrote his name down, and handed him $5. Agent Boldin indicated that Stephens did not inquire whether the amount of credits remaining was more or less than he had originally purchased, and never warned him that the machines were for amusement purposes only. Notably, Agent Boldin also testified that the machine in question does not involve any kind of skill on the part of the player, but rather, is operated by the player pressing a button to activate a spinning sequence of symbols and numbers that eventually stops in a random combination.
 {¶ 18} Similarly, Agent Boldin testified that on a second occasion at the restaurant, he inserted $20 into the Cherry 96 machine, received 400 credits with which to play, and that after playing for several minutes and losing 200 credits, he asked Stephens to "cash out." *Page 7 
Agent Boldin testified that Stephens, again, simply referred to the video screen to determine how many credits remained and did not ask him whether he had more or less credits than he originally purchased. Stephens then reset the machine to zero before retrieving the guest check pad from the drawer beneath the cash register, recording his name, along with "Cherry" and "10," and handing him $10.
 {¶ 19} While Stephens testified at trial that she does not pay people money for playing the machines, she testified that she has refunded money to patrons on previous occasions when a machine would take their money without providing credits with which to play. With respect to the events in question, however, Stephens testified she has no recollection of such events because she has experienced two strokes since that time that have resulted in memory loss.
 {¶ 20} Finally, appellant testified that he has the machines on the premises for his patrons' enjoyment, and because he profits from such machines. Specifically, appellant testified that he splits the profits "50/50" with the owner of the machines, "L J Vending," and that his share is normally $30 to $50 per week.
 {¶ 21} The foregoing testimony, if believed, was sufficient for a reasonable juror to conclude that Stephens knowingly facilitated a game of chance conducted for profit at Papa's Restaurant. Although appellant argues the state did not prove Agent Boldin was paid "winnings," the state was only required to prove he paid money to play the machines with "the hope of gain." See R.C. 2915.01(D). Based upon Agent Boldin's testimony that when he requested to "cash out," Stephens simply looked at the number of credits on the screen and paid him accordingly, rather than asking how many credits he originally purchased, a reasonable juror could conclude the element of "hope of gain" was proven. Accordingly, based upon such evidence, a reasonable juror could conclude a gambling violation occurred pursuant to R.C. 2915.02. *Page 8 
 Reckless Permitting of Gambling on the Premises {¶ 22} To prove appellant recklessly permitted his "premises to be used or occupied for gambling in violation of [R.C.] 2915.02," the state was required to prove appellant, "with heedless indifference to the consequences, * * * perversely disregard[ed] a known risk that his conduct [was] likely to cause a certain result or [was] likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2915.03(A)(2); R.C. 2901.22(C).
 {¶ 23} As an initial matter, appellant testified that he was previously convicted of a gambling offense in 1989 based upon allowing electronic game machines in his restaurant. He testified that after such conviction, he put the machines back in the restaurant with the understanding that it was illegal to "pay cash off with the machines." He also testified that some of the machines seized in this case may be the same as those he put back in the restaurant following his conviction.
 {¶ 24} Appellant testified that his purpose in allowing the machines in the restaurant was for his patrons' enjoyment, and because he earned a $30 to $50 weekly profit from the machines. In addition, while appellant testified that he never told any of his employees to pay off on the machines and has no knowledge of them doing so, he acknowledged having instructed his employees to refund money to patrons who inserted money into the machines but were not awarded credits with which to play. Appellant testified that his employees were told to write down every time they refunded a patron's money to assure patrons were not requesting more money than they had in fact lost in the machines, and that he would review these records. He indicated that such refunds for money allegedly lost in the machines would occur between four and seven times per month.
 {¶ 25} Notably, Deputy Eric Johnson testified that he assisted in the execution of the *Page 9 
search warrant on the evening of November 10, 2005, and that upon entering Papa's Restaurant, he observed appellant with his hands inside one of the machines in what appeared to be an effort to retrieve money. Approximately $84 was later confiscated from the machines, as well as $234 from the drawer beneath the cash register. The guest check bearing Agent Boldin's name, "Cherry," and "10," was also recovered from the drawer beneath the cash register, as well as another guest check with "Den," "15," and "first shift 11/10/05" written on it.
 {¶ 26} Viewing the forgoing evidence in a light most favorable to the state, we find a reasonable juror could conclude that appellant recklessly permitted gambling on the premises of Papa's Restaurant. The state presented evidence that appellant had previously been convicted of gambling for having machines of the very nature that were seized in this case, and that he understood it was illegal to "pay off" on the machines. Nevertheless, appellant testified that he permitted his employees to "refund" money to patrons who attempted to play the machines. Based upon such testimony, a reasonable juror could conclude that appellant, at a minimum, acted recklessly with respect to his supervision of his restaurant employees and the use of the machines in question. The jury was also free to believe or disbelieve appellant's testimony that he did not tell his employees to "pay off" on the machines and had no knowledge that his employees were doing so, based upon the evidence of the guest checks and Agent Boldin's testimony that Stephens paid him when he asked to "cash out" his remaining credits.
 {¶ 27} After reviewing the record, we find the state presented sufficient circumstantial evidence such that a rational trier of fact could find appellant guilty of operating a gambling house beyond a reasonable doubt. Accordingly, we find the trial court did not err in denying appellant's Crim. R. 29 motion for acquittal. Appellant's second assignment of error is therefore overruled. *Page 10 
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "THE JURY'S VERDICT FINDING [APPELLANT] GUILTY BEYOND A REASONABLE DOUBT OF VIOLATING SECTION 2915.03 OF THE OHIO REVISED CODE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 30} Appellant also argues his conviction for operating a gambling house is against the manifest weight of the evidence. While the test for sufficiency requires a determination as to whether the state has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other.Wilson, 2007-Ohio-2298 at ¶ 34. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 31} In conducting such a review, an appellate court considers the credibility of the witnesses and the weight to be given the evidence.State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. "However, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence presented." Id., citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury.Benge, 75 Ohio St.3d at 143. "The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal." Walker at ¶ 25, quoting State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. *Page 11 
 {¶ 32} As previously discussed, the state presented evidence that Stephens paid Agent Boldin after he had played the Cherry 96 game for a short period of time and asked her to "cash out." Agent Boldin testified that Stephens simply looked at the screen to verify the credits remaining before paying him, that she reset the machine to zero, and that she recorded his name and the amount she paid him on a pad that was kept under the cash register. In addition, the state presented evidence that appellant knew it was illegal to "pay off" on the machines, due to a previous gambling conviction for allowing such machines in his restaurant, but that he permitted his employees to "refund" patrons' money. Appellant testified that his employees were to write down every time such a "refund" was given, and that he reviewed these records.
 {¶ 33} The jury was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part or none of the testimony of the witnesses at trial. State v. Wood, Preble App. No. CA2005-11-081,2006-Ohio-3781, ¶ 98; State v. Nichols (1993), 85 Ohio App.3d 65, 76;DeHass, 10 Ohio St.2d at paragraph one of the syllabus. After reviewing the record in this case, we cannot say the jury clearly lost its way or created such a manifest miscarriage of justice in finding appellant guilty of operating a gambling house that his conviction must be overturned. Accordingly, we find appellant's conviction is not against the manifest weight of the evidence. Appellant's third assignment of error is therefore overruled.
 {¶ 34} Assignment of Error No. 1:
 {¶ 35} "THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN HE ALLOWED DETECTIVE HENNING TO TESTIFY ABOUT AN EMPLOYEE'S OUT-OF-COURT ORAL STATEMENTS AS THOSE STATEMENTS DID NOT QUALIFY AS AN EXCEPTION TO THE HEARSAY RULE UNDER 804(B)(3) OF THE OHIO RULES OF EVIDENCE."
 {¶ 36} Finally, appellant argues the trial court erred in permitting Detective Henning to *Page 12 
testify regarding what Stephens told him during an interview at Papa's Restaurant the night the search warrant was executed. Appellant contends such testimony was inadmissible hearsay because it did not fall within the hearsay exception for statements made against penal interest, and that the admission of such testimony violated his right to confrontation under the Sixth Amendment to the United States Constitution. We disagree.
 {¶ 37} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Generally, hearsay testimony is inadmissible unless the testimony falls within one of the recognized exceptions to the hearsay rule. See Evid. R. 802. One such exception includes statements "against penal interest," as set forth in Evid. R. 804(B)(3):
 {¶ 38} "The following [is] not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
 {¶ 39} Accordingly, a witness' out-of-court statement is admissible if (1) the witness is unavailable to testify at trial, (2) the statement tends to subject the witness to criminal liability such that a reasonable person in her position would not have made the statement unless she believed it to be true, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement. State v.Durant, 159 Ohio App.3d 208, 2004-Ohio-6224, ¶ 15. "The decision to admit a statement against interest rests within the sound discretion of the trial court" and an appellate court will not reverse such decision absent an abuse of discretion. *Page 13 Dayton v. Combs (1993), 94 Ohio App.3d 291, 303.
 {¶ 40} In this case, the record demonstrates that the state called Stephens to testify and asked her on direct examination, "do you remember [November 3 and November 10]?" Stephens responded, "[n]ot really," and proceeded to explain that she has had two strokes since such dates and only remembers events that occurred before and since that time "in bits." The state concluded its questioning by asking Stephens whether she has "any recollection concerning November 3 and November 10," to which she responded, "[n]ot really, sir. I'm sorry."
 {¶ 41} Appellant's trial counsel thereafter cross-examined Stephens regarding her job duties, and whether she "give[s] people money for playing the machines." Stephens responded that she does not give people money for playing the machines, but has refunded money to patrons on prior occasions when the machines have taken their money without awarding any credits with which to play. Appellant's counsel did not question Stephens specifically regarding the events in question in this case, or her statements to Detective Henning.
 {¶ 42} After Stephens was excused, the state called Detective Henning to testify concerning his discussion with Stephens at the restaurant the night the search warrant was executed. Detective Henning testified that although Stephens was "very hesitant" to speak with him, she eventually told him that she "paid [Agent Boldin] credits for his playing the machine." Detective Henning indicated that Stephens said "[s]he knew it was wrong * * *, but * * * did it," and described to him how she recorded the transaction on a receipt, placed the receipt in "a drawer or a place where they were kept," and paid him "a nickel per credit," "out of that money." According to Detective Henning, Stephens detailed that "later on, as per the way they've always done it, [the] receipt would be destroyed at the end of the evening." The record demonstrates that appellant's counsel objected to Detective Henning's testimony *Page 14 
concerning what Stephens told him, but that the trial court overruled the objection "based on penal interest."
 {¶ 43} As an initial matter, the record in this case demonstrates that the second criterion was satisfied, as Stephens' statement that she paid Agent Bolding for credits he accumulated in playing the game machine implicated her in the offense of gambling for which she could have been criminally charged. See R.C. 2915.02(A)(2).
 {¶ 44} In addition, the record demonstrates that the first criterion of unavailability was satisfied, where Stephens testified at trial concerning her loss of memory as to the events in question. "Unavailability as a witness" includes situations in which a declarant "testifies to a lack of memory of the subject matter of the declarant's statement * * *." Evid. R. 804(A)(3). Ohio courts have previously found a declarant to be "unavailable" where the declarant testifies as to his or her lack of memory concerning the events that occurred on a particular date that are the subject of the declarant's statement. See State v.Gibson (Nov. 30, 1994), Montgomery App. No. 14213, 1994 WL 672514, at *2-3. In addition, Ohio courts have held that "[a] court can, in its discretion, admit the former testimony of a witness based on the witness' own present testimony regarding his or her loss of memory."State v. Young (1984), 20 Ohio App.3d 269, 272-273.
 {¶ 45} Although appellant argues the state failed to prove Stephens was unavailable because it did not specifically ask her questions concerning her statements to Detective Henning, the record indicates that Stephens testified she has "absolutely no recollection" of November 3 and November 10, 2005. The record demonstrates that appellant's counsel did not thereafter question Stephens specifically regarding the events in question in this case, or her memory concerning the same. Accordingly, based upon Stephens' testimony that she has no recollection of the dates in question, we find the trial court acted within its discretion in finding her to be "unavailable" for purposes of Evid. R. 804(A)(3). *Page 15 
 {¶ 46} Finally, with respect to the third criterion, the record demonstrates that Stephens' statements were supported by corroborating circumstances surrounding the making of such statements that clearly indicated their trustworthiness. "Corroboration need not verify the matters asserted in the statement; it need only directly or circumstantially tend to establish the matters asserted."Combs, 94 Ohio App.3d at 303. "`[T]he rule contemplates a demonstration of corroborating circumstances (concerning the content of the statement and the conditions under which it was made) which, on balance, persuade the trial judge that the statement bears the clear indicia of reliability and trustworthiness.'" Id., quoting State v. Saunders
(1984), 23 Ohio App.3d 69, 73.
 {¶ 47} Here, the record demonstrates that Stephens' statements were made at the restaurant while the search warrant was being executed, and that such statements implicated her in the offense of gambling without shifting the blame to appellant. See State v. Barton, Warren App. No. CA2005-03-036, 2007-Ohio-1099, ¶ 60. Moreover, Agent Boldin testified concerning his interaction with Stephens, during which she paid him for credits and recorded the transaction on a guest check, which prompted the search of the restaurant. The state presented as evidence the guest checks as well as the money recovered during the search of the restaurant. Significantly, the record also demonstrates that Stephens was present at trial and subject to cross-examination under oath during which the jury could have assessed her demeanor and credibility. SeeChambers v. Mississippi (1973), 410 U.S. 284, 300-301, 93 S.Ct. 1038. Accordingly, we find the trial court reasonably concluded that Stephens' statements were trustworthy based upon the circumstances and corroborating evidence presented at trial.
 {¶ 48} "The existence or nonexistence of corroborating circumstances," however, "also invokes Confrontation Clause concerns." State v.Yarbrough, 95 Ohio St.3d 227, 233-236, 2002-Ohio-2126. Appellant argues the trial court's admission of Stephens' statements *Page 16 
violated his Sixth Amendment right to confrontation where the state did not ask Stephens about her statements, thereby foreclosing his opportunity for "meaningful" cross-examination. "Reviewing courts employ a de novo standard when reviewing a claim that a criminal defendant's rights have been violated under the Confrontation Clause."Barton, 2007-Ohio-1099 at ¶ 52, citing State v. Jackson, Cuyahoga App. No. 86105, 2006-Ohio-174.
 {¶ 49} The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." InCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, the United States Supreme Court held that testimonial[1] statements by witnesses are inadmissible unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. Significantly, however, the Crawford court also noted that, "* * * when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Id. at 59, fn. 9. (Internal citations omitted.)
 {¶ 50} Previous decisions of the court, which Crawford neither overruled nor called into question, have explained that "the Confrontation Clause guarantees only `an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" United States v.Owens (1988), 484 U.S. 554, 558-559, 108 S. Ct. 838. See, also, In reKitzmiller, Licking App. No. 2006-CA-00147, 2007-Ohio-4565, ¶ 40-44. Therefore, "a witness' inability to `recall either the events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances *Page 17 
under which the statement was given, does not have Sixth Amendment consequences.'" Owens at 558-559, adopting Justice Harlan's concurrence in California v. Green (1970), 399 U.S. 149, 188, 90 S.Ct. 1930. "[T]he traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." Id. at 560.
 {¶ 51} The record demonstrates that Stephens appeared at trial and was subject to cross-examination by appellant's counsel. On direct examination, Stephens testified that she has no recollection of the dates on which the events in question occurred as a result of experiencing two strokes. Appellant's trial counsel thereafter cross-examined Stephens regarding her job duties, and whether she pays money to patrons who play the game machines. Appellant's counsel did not question Stephens specifically regarding the events in question in this case, or her statements to Detective Henning.
 {¶ 52} Since the record demonstrates Stephens was present and testified at trial, and that appellant was afforded the opportunity to question Stephens concerning her statements, we find the Sixth Amendment right to confrontation was not implicated in this case. Notwithstanding such opportunity for cross-examination, the record demonstrates that appellant did not question Stephens concerning her statements on either cross-examination or by recalling Stephens to testify after Detective Henning relayed her statements during his own testimony. Notably, nothing in the record suggests appellant's cross-examination of Stephens or ability to recall her in order to question her regarding her statements was limited by the trial court. See, e.g., State v.Schoonover (June 14, 1982), Allen App. No. 1-81-28, 1982 WL 6810, at *4-5; State v. Smith (1932), 125 Ohio St. 137, 147. Accordingly, we find appellant's argument alleging a Confrontation Clause violation without merit.
 {¶ 53} Finally, we note that appellant has failed to demonstrate any prejudice resulting from the trial court's alleged error in admitting Stephens' statements. "A violation of an *Page 18 
accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt." State v. Moritz (1980), 63 Ohio St.2d 150, at paragraph two of the syllabus. See, also, State v. Hart, Hamilton App. No. C-060686, 2007-Ohio-5740, ¶ 37; State v. Primo, Butler App. No. CA2004-09-237, 2005-Ohio-3903, ¶ 17.
 {¶ 54} Our review of the record demonstrates that Stephens' statements were substantially similar to Agent Boldin's testimony that Stephens paid him for credits without inquiring how many credits he originally purchased, and recorded the transaction on a guest check which she placed in a drawer. In addition, the state presented the guest checks recovered from the restaurant, corroborating Agent Boldin's testimony. Appellant testified that he instructed his employees to "refund" patrons' money when a machine took their money without awarding credits with which to play, and to record when such "refunds" were given. Appellant also testified that he had previously been convicted of a gambling offense based upon allowing machines in his restaurant of the very nature at issue in this case, and that he understood it was illegal to "pay off" on the machines. Such evidence, as previously discussed, was sufficient to support appellant's conviction beyond a reasonable doubt.
 {¶ 55} Based upon the foregoing, we find appellant's first assignment of error without merit and overrule the same.
 {¶ 56} Judgment affirmed.
YOUNG, P.J. and WALSH, J., concur.
[1] In addressing what constitutes a "testimonial statement," the court found that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations" since "[t]hese are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." Id. at 68. *Page 1