OPINION.
{¶ 1} Defendant-appellant, Jeffrey Crutchfield, appeals his conviction in the Warren County Court of Common Pleas for complicity to improperly discharging a firearm at or into an habitation. We affirm appellant's conviction.
 {¶ 2} Alan Poole lives on Laura Marie Drive in Waynesville, Ohio. Appellant lives on Lytle Road in Waynesville, about one-half mile southwest of Poole's home. On February 15, 2005, Poole came home in the middle of the afternoon to the sound of automatic weapon fire. The gunfire, which "sounded like a war zone," was coming from the direction of appellant's property and lasted about an hour. That day, John Purdum, who lives next door to appellant, also came home in the afternoon to the sound of gunfire. According to Purdum, the gunfire was so close it was "absolutely frightening;" alternated between semi-automatic weapon fire and full automatic weapon fire; was coming from appellant's property; was not directed at his property, but rather was directed toward Poole's street; and did not let up until it stopped abruptly. Because they were "absolutely right on top of it," Purdum had no doubt it was coming from appellant's property. The next day, Poole found a .223 caliber bullet in the casement of a window in his house. The bullet had gone through the roof and a wall before hitting the window.
 {¶ 3} Appellant's property was searched on March 16, 2005. Two days later, appellant was indicted on one count of improperly discharging a firearm at or into an habitation in violation of R.C. 2923.161(A)(1). A jury trial revealed the following additional facts:
 {¶ 4} Jack Stubbs, a neighbor of Poole on Laura Marie Drive, generally testified about hearing automatic gunfire coming from the vicinity of appellant's property. Poole, Stubbs, and Purdum unsuccessfully tried to videotape appellant's property from Purdum's property whenever they would hear gunfire. Although they never saw anyone physically shoot on appellant's property, all three men did observe people on appellant's property. Purdum testified he saw three men on the property, two of them had long rifles and were discussing the weapons they were handling. Stubbs also once saw three men on appellant's property. One of the men had a rifle that looked like an AR-15 rifle. Stubbs testified that as soon as two police cruisers pulled into Purdum's driveway, the three men went into appellant's garage and closed the door.
 {¶ 5} Deputy Brian Lewis of the Warren County Sheriff's Office investigated the February 2005 shooting incident. On February 16, Dep. Lewis went to appellant's property and explained to him that as it had happened in 2004, there were once again complaints regarding shooting over on Lytle Road and bullets were striking houses on Laura Marie Drive. Appellant told the deputy he was at work on February 15, and denied shooting on February 15 or having someone shoot on his property. He refused the deputy's request to search the property without a warrant.
 {¶ 6} A search warrant was executed on March 16. Although no weapons were recovered during the search, various items associated with semi-automatic and automatic rifles were recovered at the property. These included 25 .223 cartridge casings found on the ground; magazines for an AR-15 type rifle with a capacity to hold 56 cartridges; trigger pins; AR and M16 parts; collapsible stocks for an AR or M16 rifle; a magazine loader for a .223 rifle; .223 caliber magazines; a drum magazine possibly for an AR or M16 rifle; and ammunition. Some recovered items were brand new and still in their factory packing. Appellant came home while the search was being conducted. He denied having shot weapons on his property or letting others shoot weapons. After being told about the recovered items, appellant stated "you've got to have the firearm to match with the ballistics and the bullet."
 {¶ 7} The .223 caliber bullet found in Poole's house and the 25 .223 casings found on appellant's property were examined by Timothy Duerr, a specialist in firearms and tool mark identification for the Miami Valley Regional Crime Laboratory. Duerr identified the bullet found in Poole's house as one that would be compatible with a semi-automatic AR-15 rifle. Duerr testified that the 25 .223 casings were fired from the same weapon. He could not, however, state whether the bullet from Poole's house came from one of the 25 casings. He further testified that the trigger pins found on appellant's property were only used with AR-15 rifles.
 {¶ 8} Dep. Lewis is a certified firearm instructor and an armorer certified to work on AR-15 and M16 rifles. He testified that a bullet fired from a semi-automatic weapon can travel over 3,000 yards. Thus, a bullet fired from such a weapon could travel the half-mile distance between appellant's and Poole's properties and then penetrate a roof, drywall, and window. Dep. Lewis also testified that based on maps and GPS readings, there was almost a straight line between appellant's property and Poole's house with only a few degrees off. The line was consistent with the angle of the bullet found in Poole's house. Gary Wilgus, a shooting reconstruction expert with the Ohio Bureau of Criminal Investigation, testified that he could not determine exactly from where the bullet found in Poole's house was fired. However, the bullet was fired from somewhere south of Poole's house, could have been fired from appellant's property, and could not have been fired from or near Poole's house. Both Wilgus and Detective Roger Barnes of the Warren County Sheriff's Office testified that the bullet could not have been fired from a firing range located two miles south of Poole's property.
 {¶ 9} Poole testified that there has been no further automatic gunfire since appellant's arrest. Likewise, Det. Barnes testified that there have been no reports of shooting since appellant's property was searched.
 {¶ 10} Over appellant's objections, the trial court allowed testimony regarding shooting incidents in 2004. Three neighbors living on the same street as Poole testified that in June 2004 they heard semi and/or full automatic gunfire coming from a location south of their properties. Appellant's property is south of their properties. The houses of two of the neighbors were hit by a bullet while a bullet was recovered from the third neighbor's car. A crime lab report showed that these bullets had been fired by a high caliber rifle. Poole likewise testified about hearing automatic gunfire in 2004.
 {¶ 11} Deputy Troy Lauffer of the Warren County Sheriff's Office investigated the 2004 shootings. Information from residents on Laura Marie Drive and Lytle Road led his investigation to appellant. Dep. Lauffer told appellant about the shooting complaints. He also advised appellant that if he was shooting on his property, to make sure he had an adequate backstop. Appellant admitted having an AK rifle and an AR rifle but refused to let the deputy see or take the weapons without a warrant. Dep. Lauffer returned to appellant's property on July 2, 2004 on a complaint of an illegal burn. At that time, he observed bullet holes in trees at the edge of the property. The deputy removed a spent round from a tree with his knife. Once again, appellant told the deputy to get a warrant before he looked any further.
 {¶ 12} Two witnesses testified on behalf of appellant. Randy Allen lives on appellant's street on a property owned by Ronald Wical. Allen testified he has heard gunfire coming from all directions, and has heard semi and full automatic gunfire mostly from the firing range. He also testified about hearing automatic gunfire one day near his property, from a place that was closer than the firing range. On that particular day, Allen brought his children inside his home. Wical testified about hearing automatic gunfire coming from various directions, including from appellant's property.
 {¶ 13} Finally, appellant testified on his behalf. Appellant testified that he was working on February 15, 2005, the day Poole's house was hit. Appellant denied shooting that day or in June 2004, and denied allowing people to shoot on his property. To his knowledge, nobody has shot from his property. Appellant testified that over the years, he has heard a lot of gunfire, typically from the firing range. However, appellant agreed that the bullet found in Poole's house could not have been fired from the firing range.
 {¶ 14} With regard to the 2004 shooting incidents, appellant denied telling Dep. Lauffer he had an AK or AR rifle. According to appellant, he never heard complaints in 2004 regarding automatic gunfire and high powered rifles; in fact, Dep. Lauffer only told him about one struck house. With regard to the people seen on his property by Poole, Purdum, and Stubbs, appellant testified he had no idea who they were. Appellant did say, however, that on the day Stubbs saw three persons on appellant's property, two persons were indeed on his property to look at a tractor. Appellant explained he had a lot of gun-related items, including parts for AR-15 rifles, because he intended to start a gun parts business and AR-15 and AK-47 rifles were the most popular weapons on the market.
 {¶ 15} Appellant also testified that (1) it was highly improbable Dep. Lauffer removed a bullet from a tree; (2) he did not allow his property to be searched without a warrant because he either had to leave or it was too late in the day; (3) he did not remove weapons from his property before the search warrant because there were no weapons to move; (4) the 25 .223 casings found on his property were likely fired by his wife's grandfather when he used to shoot at ground hogs; and (5) he would not shoot high powered rifles on his property because of safety concerns due to new construction. Appellant stated there was only a remote possibility that bullets fired from his property could strike houses on Poole's street; "it would have to be a magic bullet."
 {¶ 16} On September 28, 2005, a jury found appellant not guilty of improperly discharging a firearm at or into an habitation, but found him guilty of complicity to improperly discharging a firearm at or into an habitation. Appellant was sentenced to two years in prison. This appeal follows in which appellant raises two assignments of error.
 {¶ 17} Assignment of Error No. 1:
 {¶ 18} "THE CONVICTION SHOULD BE REVERSED BECAUSE THE EVIDENCE TO SUPPORT THE CHARGE WAS INSUFFICIENT AS A MATTER OF LAW."
 {¶ 19} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury's. See State v. Benge,75 Ohio St.3d 136, 1996-Ohio-227.
 {¶ 20} In the case at bar, appellant's conviction was based solely on circumstantial evidence. However, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can only be established by circumstantial evidence. State v.Mobus, Butler App. No. CA2005-01-004, 2005-Ohio-6164, ¶ 51. "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." McKnight, 107 Ohio St.3d at ¶ 75. A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. State v. Apanovitch (1987),33 Ohio St.3d 19, 27.
 {¶ 21} Appellant was convicted of complicity to improperly discharging a firearm at or into an habitation in violation of R.C. 2923.161(A)(1) and 2923.03. Under R.C. 2923.03(F), a defendant "may be convicted of [an] offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity." State v. Herring, 94 Ohio St.3d 246,251, 2002-Ohio-796.
 {¶ 22} R.C. 2923.161(A)(1) provides that "no person, without privilege to do so, shall knowingly * * * discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Complicity is defined in pertinent part in R.C. 2923.03
as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense, [or] [c]ause an innocent or irresponsible person to commit the offense." R.C. 2923.03(A)(2) and (4). "It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." R.C. 2923.03(B).
 {¶ 23} To aid and abet is "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." State v. Johnson,93 Ohio St.3d 240, 243, 2001-Ohio-1336, quoting Black's Law Dictionary (7 Ed.Rev. 1999) 69. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." Johnson at syllabus. Such intent may be inferred from one's presence, companionship, and conduct before and after the offense is committed. Id. at 245.
 {¶ 24} Upon thoroughly reviewing the record, we find that the evidence was sufficient to support a finding that appellant was guilty of complicity to improperly discharging a firearm at or into an habitation with regard to the February 2005 shooting incident. The state presented circumstantial evidence that appellant knowingly (1) aided and abetted another in the commission of the offense or (2) caused an innocent or irresponsible person to commit the offense.
 {¶ 25} Following shooting incidents in 2004 in which houses and a car on Poole's street were struck by bullets coming from the direction of appellant's property, appellant was told by Dep. Lauffer about the shooting incidents and that he needed an adequate backstop on his property. When appellant's property was searched in March 2005, there was no such backstop. The semi and full automatic gunfire heard in 2004 came from the direction of appellant's property. Although he admitted owning an AK rifle and an AR rifle, appellant refused to let Dep. Lauffer look at the weapons or look around the property without a search warrant. Dep. Lauffer did observe bullet holes in trees at the edge of appellant's property and removed a bullet from a tree.
 {¶ 26} The bullet found in Poole's house was a .223 caliber bullet, the type of ammunition used in an AR-15 rifle. Experts for the state of Ohio estimated that the bullet's path crossed appellant's property and that it could not have been fired from the firing range. When Dep. Lewis contacted appellant on February 16, 2005 about the new shooting incident, appellant refused to let him search his property without a warrant. By the time the property was searched in March, no weapons were found. However, several gun related items were recovered including 25 .223 casings, .223 ammunition, magazines for an AR-15 type rifle with a capacity to hold 56 cartridges, and AR or M16 parts. Appellant explained the presence of those items by stating his intention to start a gun parts business. People with rifles were seen on appellant's property. Although appellant testified he did not know who those persons were, he did acknowledge that on the day a neighbor saw people on his property, two persons were on his property allegedly to look at a tractor. After his property was searched, the automatic gunfire stopped.
 {¶ 27} As previously noted, participation in criminal intent may be inferred from conduct before and after the offense is committed.Johnson, 93 Ohio St.3d at 245. A person acts knowingly when he is aware that his conduct will probably cause a certain result. R.C. 2901.22(B). Considering all of the foregoing facts and circumstances in the light most favorable to the prosecution, we find that the evidence is sufficient to support appellant's conviction for complicity to improperly discharging a firearm at or into an habitation. Appellant's first assignment of error is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS WHEN IT LET THE PROSECUTION PRESENT EVIDENCE OF SIMILAR SHOOTINGS THAT HAPPENED MONTHS BEFORE THE CHARGED INCIDENT."
 {¶ 30} Appellant argues that the trial court erred by allowing several witnesses to testify about shooting incidents from 2004. The record shows that prior to the testimony, appellant objected to it on the ground that such evidence was irrelevant and prejudicial. The trial court overruled the objection, stating "[t]he fact that it may have occurred and [appellant] was on notice of those is relevant to one of the elements of this, which is knowledge [of the circumstances surrounding the February 15, 2005 shooting incident]."
 {¶ 31} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. Thus, we will not reverse the trial court's decision absent an abuse of discretion as well as a showing that the accused has suffered material prejudice. State v. Martin (1985), 19 Ohio St.3d 122, 129. Abuse of discretion connotes more than an error of law or judgment, and implies that the decision of the trial court was unreasonable, arbitrary, or unconscionable. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-106, ¶ 130.
 {¶ 32} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, evidence of prior acts cannot be admitted merely to show that a defendant has a criminal character. However, under the exceptions of Evid.R. 404(B), the evidence can be admitted to show, inter alia, knowledge. As noted earlier, a "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 33} In the case at bar, witnesses living on the same street as Poole briefly testified that in June 2004, they heard semi and/or full automatic gunfire coming from a location south of their properties. Appellant's property is south of their properties. Their testimony also indicated that the houses of two of the witnesses were hit by a bullet while a bullet was recovered from the car of a third witness. Dep. Lauffer' s investigation of these shootings led him to appellant. Dep. Lauffer told appellant about the shooting complaints and advised him to have an adequate backstop. Although appellant told the deputy he had an AK rifle and an AR rifle, he refused to let him see or take the weapons without a warrant. The gunfire heard in 2004 resumed in 2005 but ceased following the search of appellant's property in March 2005.
 {¶ 34} The foregoing testimony was not offered to show that appellant acted in conformity with previous bad acts. Rather, it was offered to show that he had previously been told about the 2004 shooting incidents and had knowledge that shootings coming from the direction of his property had hit at least one house in Poole's neighborhood. Appellant was therefore aware that bullets fired from his property or its vicinity could strike houses a half of a mile away. Accordingly, the evidence was properly admitted under Evid.R. 404(B) to establish knowledge. SeeState v. Ridgeway, Cuyahoga App. No. 82713, 2004-Ohio-497.
 {¶ 35} In addition, the trial court specifically instructed the jury during trial: "Earlier, we heard testimony from a number of witnesses regarding allegations of other shootings or bullets in homes in June of 2004. * * * That evidence was received only for a limited purpose. It was not received and you are not permitted to consider it to prove the character of the Defendant or to show he acted in conformity or in accordance with that character. * * * [I]f you find that that evidence is true and that the Defendant committed those acts, you may then consider that evidence only for the purpose of deciding whether or not it proves the Defendant's knowledge of circumstances surrounding the offense charged in this trial. You are not permitted to consider that evidence to demonstrate the Defendant possessed a certain character or that he acted in accordance with that character[.]" A similar instruction was given to the jury before jury deliberations.
 {¶ 36} A jury is presumed to follow the instructions given by a trial judge, including curative instructions. State v. Loza, 71 Ohio St.3d 61,75, 1994-Ohio-409. There is no evidence that the jury disregarded the trial court's instructions.
 {¶ 37} We therefore find that the trial court did not abuse its discretion when it allowed testimony regarding shooting incidents from 2004. Appellant's second assignment of error is overruled.
 {¶ 38} Judgment affirmed.
POWELL, P.J. and BRESSLER, J., concur.