OPINION
{¶ 1} Defendant-appellant, Humberto Mota, appeals his conviction from the Warren County Court of Common Pleas for the offense of murder under R.C. 2903.02(B).[1] *Page 2 
 {¶ 2} Appellant was charged in connection with a disturbance outside of a bar that resulted in the stabbing death of a male victim during the early morning hours of August 26, 2006 in Mason, Ohio. Appellant's case was tried to a jury, which returned a verdict of guilty. After sentencing, appellant instituted the instant appeal, asserting two assignments of error.
 {¶ 3} We list appellant's assignments of error in a different order than originally set forth, but address them together for ease of discussion.
 {¶ 4} Appellant argues in his second assignment of error that the trial court erred in denying his Crim. R. 29 motion for acquittal as the state presented insufficient evidence to support the guilty verdict. Under his first assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.
 {¶ 5} Crim. R. 29(A) provides that a trial court may order a judgment of acquittal if the evidence is insufficient to sustain a conviction. An appellate court reviews the denial of a Crim. R. 29(A) motion under the same standard as for a claim of insufficient evidence, and, therefore, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Huston, Fayette App. Nos. CA2006-05-021, CA2006-06-022,2007-Ohio-4118, ¶ 5, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 6} A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id.; State v. Blanton, Madison App. No. CA2005-04-016, 2006-Ohio-1785, ¶ 7.
 {¶ 7} Appellant and his brother, Jose R. Mota ("Jose"), were both charged with *Page 3 
murder and their cases were tried together. Jose was found not guilty by the jury. While much of the evidence related to both co-defendants, we will focus our discussion on the evidence pertaining to appellant's case.
 {¶ 8} Testimony was presented by the state that the victim and his friend were drinking on the night in question and visited other establishments before they stopped at the Mason Pub ("pub").
 {¶ 9} Appellant, Jose, and others lived in a house within walking distance from the pub. Jose told police in video interviews presented to the jury that on the night in question, he was at the pub with a friend who also lived at the house. Jose told police that he was punched in the face by a Caucasian male during an incident outside of the pub.[2]
Jose testified that he rode home with his friend, but walked back to the outside area of the pub alone, where he was involved in an altercation with the victim's friend. Four witnesses testified that they saw appellant that night at the pub with Jose.
 {¶ 10} A female employee of the pub and her boyfriend were two of the four witnesses who said they saw appellant at the pub. The female employee testified that she was standing with her boyfriend next to her vehicle after she completed her shift when she observed Jose and appellant walk past her, and shortly thereafter, saw Jose fighting with the victim's friend.
 {¶ 11} The employee testified that she heard the victim yell "help me," as he ran around the side of the building, and she recognized appellant as one of four individuals chasing the victim toward the back of the building. She stated that she could not identify any of the other three individuals chasing the victim. *Page 4 
 {¶ 12} The female employee's boyfriend admitted that he had been drinking that night and that he and his girlfriend were "making out" at her car. He testified that he observed appellant and other individuals chasing the victim. The boyfriend said he recognized appellant because of appellant's long hair and ponytail and he remembered appellant wearing a "wifebeater" that night.[3]
 {¶ 13} A police officer testified that he was patrolling the area at 2:15 a.m., and noticed no problems in the parking area of closed businesses behind the pub building. The officer testified that he responded to a dispatch and returned to the area at approximately 2:34 a.m. As he drove toward the businesses behind the pub area, he saw the victim lying on his back on the pavement, with his shirt covered in blood. The officer testified that the victim was still alive when he reached his side.
 {¶ 14} Testimony was presented that a police canine called to the scene shortly after the victim was discovered followed a "very strong" or recent "track" from the back parking lot through the woods to the door of Jose and appellant's house. All eight occupants found in the house that morning were questioned by police and later released.
 {¶ 15} During the interviews with police, appellant stated through a translator that he did not visit the pub that evening and was home asleep during the time of the murder. Police executed a search warrant at the house and located three white shirts stuffed into the sump pump in the basement.[4] Both of the tee-shirts tested positive for the victim's blood. The sleeveless undershirt was negative for the presence of blood.
 {¶ 16} Law enforcement authorities found a cell phone that belonged to another *Page 5 
occupant of the house, as well as a "shark's tooth" necklace and a baseball hat at or near the scene. A forensic pathologist testified that the victim died from multiple stab wounds. Most of the males from the house questioned by police reportedly left town and could not be located at the time of trial.
 {¶ 17} R.C. 2903.02(B) states that no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence which, according to the bill of particulars in the instant case, was felonious assault. See, also, R.C. 2903.11 (felonious assault statute).
 {¶ 18} The jury was instructed that before appellant could be found guilty, the jury must find beyond a reasonable doubt that appellant "knowingly aided and abetted another in committing the offense of murder." See R.C. 2923.03 and R.C. 2901.22(B).
 {¶ 19} To support a conviction for complicity by aiding and abetting, the evidence must show that the accused supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the accused shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. State v. Johnson, 93 Ohio St.3d 240, 245,2001-Ohio-1336; State v. Crutchfield, Warren App. No. CA2005-11-121,2006-Ohio-6549, ¶ 23.
 {¶ 20} Criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. Johnson at 245;Crutchfield, ¶ 23. The mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor. Johnson at 243.
 {¶ 21} Reviewing the evidence most favorably for the state on appellant's sufficiency challenge, we find that a reasonable jury could have found beyond a reasonable doubt all of the elements of the offense of murder.
 {¶ 22} Testimony was presented from four witnesses that appellant was observed at *Page 6 
the pub, although he claimed he was at home that evening. Two witnesses testified that appellant was one of the individuals chasing the victim around the back of the building, which is the area where the fatally-wounded victim was found shortly thereafter. In addition, a police canine followed a track from the crime scene to the house where appellant and others were found and a shirt similar in style to the one appellant was identified as wearing was concealed in the sump pump of the house along with the two shirts that contained spots of the victim's blood.
 {¶ 23} We are cognizant that this case turns on circumstantial evidence, but "proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence," State v. Nicely (1988),39 Ohio St.3d 147, 151, and circumstantial evidence has no less value than the others.
 {¶ 24} Appellant argues that he presented the testimony from three independent witnesses who reported that they are familiar with appellant and did not see him at the pub that night. Appellant stresses that many of the occupants living in the house that night have absconded, while appellant did not. Appellant also argues that even if he were present, the evidence does not support the finding that he supported, assisted, encouraged, cooperated with, advised, or incited the principal in the murder.
 {¶ 25} We are mindful that the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial. Id., at 389.
 {¶ 26} After reviewing the evidence under the applicable standard for the manifest weight of the evidence challenge, we cannot say that the jury clearly lost its way and created *Page 7 
such a manifest miscarriage of justice that the conviction must be reversed. The jury determined that appellant participated in the events that led to the victim's death, that appellant's participation rose to the level of complicity to murder, and his intent was shown by his presence, companionship and conduct before and after the offense was committed.
 {¶ 27} Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 28} Judgment affirmed.
BRESSLER and YOUNG, JJ., concur.
[1] Appellant was indicted for the offense of murder under R.C. 2903.02(B). The jury was instructed on and returned a verdict of guilty to complicity to murder under the same statute. The sentencing entry indicated that the sentence was imposed for R.C. 2903.02(B). According to R.C. 2923.03(F), a charge of complicity may be stated in terms of this section, or in terms of the principal offense. See, e.g., State v.Lang (Apr. 11, 1988), Clermont App. Nos. 87-10-080, 87-10-087 (court had option of stating the offense in terms of complicity or the principal offense).
[2] Jose told police that he believed the incident involved an ethnic comment directed to him or his friend. It is not clear from the record whether the victim and his friend were the two Caucasian males involved in this altercation.
[3] The witness was not asked to describe for the jury what he meant when he indicated that appellant was wearing a "wifebeater." The term has been associated with undershirts with thin straps or no sleeves, as in a "tank" undershirt. See State v. Manns (Kan.App. 2004), 97 P.3d 1072.
[4] No witness described in detail for the record the three white shirts found in the sump pump, but the three exhibits admitted at trial contained two white tee-shirts with sleeves and one white sleeveless, tank-type shirt. *Page 1