[Cite as *State v. Leiter*, 2017-Ohio-8537.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                    :          CASE NO.   CA2016-12-104

                                      :          O P I N I O N
 - vs -                                  11/13/2017

                                        :

JONATHON LEITER,                            :

    Defendant-Appellant.                   :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16 CR 31757


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Babb & Rowland & Anderson, LLC, Charles M. Rowland II and David J. Smith, 2190 Gateway Drive, Fairborn, Ohio 45324, for defendant-appellant


**PIPER, J.**

{¶ 1}   Defendant-appellant, Jonathon Leiter, appeals his convictions and sentence in the Warren County Court of Common Pleas for operation of a vehicle while under the influence ("OVI"), possession of drugs, and possession of a traffic control sign.

{¶ 2}   A Warren County Deputy Sheriff was on patrol when he observed a pickup truck partially pulled off the roadway with its front end in the vegetation on the side of the

road and its rear end protruding into the road.  Despite it being dark at the time, the truck did not have any lights on.  The deputy noticed movement inside the truck, and decided to investigate the driver's well-being.

{¶ 3}  The deputy approached the truck and asked the driver, later identified as Leiter, if he needed assistance.  At that time, Leiter turned on the lights in the truck and drove away from the deputy so quickly that the tires spun in the gravel and mud.  Leiter then drove to a parking lot, and the deputy followed.  When the deputy made contact with Leiter in the parking lot, he smelled an odor of an alcoholic beverage coming from Leiter's breath and person.  The deputy also noticed that Leiter's speech was slurred, his eyes were blood shot and glassy, and that the odor coming from Leiter's breath was consistent.  The deputy also noticed that Leiter was "imbalanced" and that he had difficulty articulating where he had come from and where he was going.

{¶ 4}  The deputy observed tree bark embedded into the front of Leiter's truck, an alcoholic beverage container on the driver's side floorboard, as well as a bottle of rum and a prescription bottle of medication.  The deputy also observed a city of Carlisle 35 m.p.h. speed limit sign in the bed of Leiter's truck, which had fresh mud on it.

{¶ 5}  The deputy asked Leiter if he had been drinking.  At first, Leiter denied drinking alcohol, but then changed his answer to yes while also voicing concerns about being arrested for OVI because he had been convicted of OVI in the past.  During the time that the deputy conversed with Leiter, Leiter became more lethargic, had difficulty keeping his eyes open, and was falling asleep. The deputy then placed Leiter in his police cruiser.  Leiter agreed to a blood test, and the deputy took him to the hospital so that the test could be performed. Leiter's blood alcohol content was .058, below the legal limit for operating a vehicle. However, the blood test revealed the presence of benzodiazepines and opiates.

{¶ 6}  The state indicted Leiter for OVI, possession of drugs, and possession of a

traffic control sign. The OVI charge carried a specification that Leiter had been convicted of five or more counts of OVI in the prior 20 years. Leiter waived a jury trial, and instead, the matter proceeded to a bench trial. The trial court found Leiter guilty on all counts, and sentenced him to six years and six months in prison. Leiter also had his driver's license permanently revoked. Leiter now appeals his convictions and sentence, raising the following assignments of error. We will address Leiter's first and third assignments of error together, as they are interrelated.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT FINDING APPELLANT GUILTY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} Assignment of Error No. 3:

{¶ 10} THE TRIAL COURT ERRED BY NOT GRANTING THE DEFENDANT'S MOTION FOR ACQUITTAL UNDER OHIO RULES OF CRIMINAL PROCEDURE RULE 29.

{¶ 11} Leiter argues in his first and third assignments of error that the trial court erred by finding him guilty.

{¶ 12} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5.

{¶ 13} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 14} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 15} In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* Although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 16} Leiter was convicted of OVI in violation of R.C. 4511.19(A)(1)(a), which

provides that no person shall operate a vehicle while under the influence of alcohol or drugs, or a combination of them. According to R.C. 2941.1413(A), a mandatory prison term of one to five years must be imposed if the defendant had been convicted of five or more instances of OVI within the last 20 years. Leiter was also convicted of possession of drugs in violation of R.C. 2925.11(A), which provides that no "person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Finally, Leiter was convicted of possession of a speed sign in violation of R.C. 4511.18(B), which provides that no person shall buy, sell, or possess a traffic control device such as a speed limit sign.

{¶ 17} The state offered sufficient evidence to support Leiter's convictions, and the convictions were not against the manifest weight of the evidence. The state first presented testimony from the deputy who encountered Leiter on the night of the incident. The deputy testified that he had eight years of experience as a police officer, and had advance training for "dealing with people who may be under the influence of either drugs or alcohol or both." The deputy testified that he had over 1,000 encounters with people suspected of intoxication in his time as an officer.

{¶ 18} The deputy testified that on the night in question, he observed a pickup truck on the side of the road with its truck bed protruding into the roadway. The position of the truck was causing a "traffic hazard" and the truck was not illuminated in any way. The deputy testified that he decided to check on the vehicle and driver, and that when he approached, the driver drove away quickly. The truck turned into the parking lot of an apartment building and the deputy was able to make contact with the driver, later identified as Leiter.

{¶ 19} The deputy testified that when he approached Leiter, he could smell the odor of an alcoholic beverage coming from Leiter's breath and his person. Leiter's eyes were also bloodshot and glassy, and his speech was slurred. The deputy noticed that Leiter was "imbalanced" and that he had trouble articulating where he had been and where he was

going. During the interaction, the deputy noticed Leiter's condition worsening to the point that Leiter was falling asleep and had trouble keeping his eyes open.

{¶ 20} During the exchange, Leiter indicated that he had not been drinking, admitted that he had been drinking, and then told the deputy that he was "facing five years." Also during the exchange, the deputy noticed a prescription bottle of pills in Leiter's truck, as well as speed limit sign in the back of the pickup truck with fresh mud still on it. The truck itself had damage to the front end and tree bark was embedded into portions of the truck. The deputy also located an open container of an alcoholic beverage on the driver's floorboard. The can was cold to the touch and had condensation on it, which indicated to the deputy that the can had been recently opened and was being consumed. The deputy also located an open bottle of rum.

{¶ 21} The deputy testified that he did not ask Leiter to perform field sobriety tests because Leiter claimed eye and leg injuries. Nor did the deputy ask Leiter to perform a breathalyzer given his belief that Leiter was intoxicated from drug usage in addition to alcohol consumption. The deputy asked Leiter to submit a blood test, to which Leiter agreed. During the time before the test was administered, Leiter went limp, dropped things he was holding, and had to be reminded to "sit up."

{¶ 22} At the hospital, Leiter continued to demonstrate signs of lethargy, including not responding to questions, having difficulty remaining conscious, falling asleep, and providing numbers when asked to spell a word.

{¶ 23} The deputy testified that in his opinion, Leiter was under the influence of drugs and alcohol on the night in question. The deputy also testified that despite the blood test indicating a blood alcohol content of .058, the test also revealed the existence of benzodiazepines and opiates. Moreover, the pills found in Leiter's truck included alprazolam, which is a controlled substance.

{¶ 24} The deputy also testified that Leiter had been convicted of eight OVIs in the last 20 years, and the exhibits containing recordation of the convictions were entered into evidence by the state.

{¶ 25} The state also presented testimony from another officer that the speed limit sign in the back of Leiter's truck was a valid speed limit sign belonging to the city of Carlisle. The officer testified that when she came to pick up the speed limit sign from Leiter's truck, she observed Leiter "unsteady on his feet and he had really slurred speech."

{¶ 26} The state also presented testimony from a toxicologist, who was qualified as an expert by the court. The toxicologist testified that opioids are a depressant and that they have the ability to "depress an individual's coordination, judgment, almost all nervous system functions." The toxicologist also testified that alcohol can have similar effects, such as depressing the nervous system activities and functions. The toxicologist then gave his opinion that based on the information presented, Leiter was impaired on the night in question in regard to his ability to operate a motor vehicle.

{¶ 27} This evidence, when viewed in a light most favorable to the prosecution, is sufficient to support Leiter's convictions. Moreover, the trial court did not clearly lose its way or create such a manifest miscarriage of justice that Leiter's convictions must be reversed and a new trial ordered. As such, Leiter's first and third assignments of error are overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

{¶ 30} Leiter argues in his second assignment of error that he received ineffective assistance of counsel.

{¶ 31} To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v.*

*Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id. at 694.*

{¶ 32} The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 33} Leiter asserts that he was denied effective assistance of counsel when his trial counsel failed to obtain expert testimony specific to his drug usage. Leiter was prescribed medication after a recent surgery, and asserts that if an expert had testified to his medical history and prescription usage, such expert testimony would have demonstrated his tolerance for pain medication and how he responded to these medications.

{¶ 34} Despite Leiter's arguments, the record indicates that Leiter's trial counsel cross-examined the state's expert, and thus did not engage in deficient conduct. "It is generally a legitimate trial strategy for defense counsel not to present expert testimony and, instead, rely upon cross-examination of a state's expert to rebut evidence of a crime." *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 25.

{¶ 35} The record indicates that Leiter's counsel was able to elicit from the state's expert that Leiter's blood alcohol test indicated that the level of hydrocodone was consistent with someone taking the drug for therapeutic reasons. The state's expert also testified on cross-examination that the effect of the drugs would depend on one's tolerance level, and

that when used to relieve pain the drug would not make a person "high," but instead may make one "a little bit dizzy initially."

{¶ 36} The testimony elicited on cross-examination was enough to support Leiter's argument that he took the pain medication as a result of a recent surgery to manage pain. However, that does not change the evidence that the result of Leiter's mixing drugs and alcohol, regardless of the reason, was that he was impaired to drive. As such, the results of the trial would not have been different, and Leiter's ineffective assistance of counsel claim fails on this point.

{¶ 37} Leiter also claims that his trial counsel was ineffective for not filing a motion to suppress because the statements he made to the deputy while in custody were coerced. The failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. *State v. Smith*, 12th Dist. Fayette No. CA2014-05-013, 2015-Ohio-1094, ¶ 44. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 208. The failure to file a motion to suppress "signifies ineffective assistance of counsel only when the record establishes that the motion would have been successful if made." *State v. Kelly*, 12th Dist. Butler No. CA2006-01-002, 2007-Ohio-124, ¶ 25. Further, even when there is some evidence in the record to support a motion to suppress, "an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile." *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

{¶ 38} Leiter fails to demonstrate that a motion to suppress would have been successful if filed. He offers no facts, other than those elicited at trial, regarding his statements to the deputy or how such were coerced. Moreover, there is nothing in the record

that indicates Leiter was even subjected to custodial interrogation when Leiter made statements to the deputy. Instead, the deputy was merely checking on Leiter's safety when he had contact with Leiter, and nothing indicates that Leiter felt he was in custody. Leiter fails to demonstrate that had his counsel filed a motion to suppress, one would have been granted.

{¶ 39} Finally, Leiter claims that his trial counsel was ineffective for not preparing him before he testified at the bench trial in his own defense. However, there is no indication in the record that Leiter's trial counsel did not prepare him for his testimony. Moreover, Leiter's trial counsel asked him questions based on the expert's testimony and other evidence presented at trial. There is no indication that Leiter was surprised or unprepared to answer the questions. From the record, Leiter presented testimony designed to explain facts that had come into evidence. His testimony appears to have been fully delivered and aimed at compromising the circumstances. In light of all the facts and circumstances, sometimes testimony is not believed even if one had prepared its delivery. There is no indication in the record to support Leiter's contention that he received ineffective assistance of counsel. Leiter's second assignment of error is therefore, overruled.

{¶ 40} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.