[Cite as *State v. Weis*, 2021-Ohio-2986.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-07-009 |
| | : | O P I N I O N |
| - vs - | | 8/30/2021 |
| | : | |
| ANGELIA WEIS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY MUNICIPAL COURT
Case No. TRC2000371B

David M. Henry, City of Wilmington, Chief Prosecuting Attorney, for appellee.

Rose & Dobyns Co., LPA, and Blaise Underwood, for appellant.

**BYRNE, J.**

{¶1}   Angelia Weis appeals from the judgment entry of the Clinton County Municipal Court, which found her guilty of a marked lanes violation.  For the reasons detailed below, we affirm the trial court's decision.

### I.  Factual Background

{¶2}   On January 28, 2020, a trooper with the Ohio State Highway Patrol cited Weis

for failure to drive in marked lanes.[1]  The matter proceeded to a bench trial.

{¶3}  Trooper Jeremy Priest testified that he received a radio report of a vehicle driving left of center on a roadway, which vehicle had almost caused several crashes and had run several cars off the roadway.  He responded to the area of the report and observed the vehicle in question traveling westbound on State Roue 73 where it crosses Interstate 71.  Trooper Priest described the vehicle as driving in the "middle of the roadway."  He initiated his lights and sirens to stop the vehicle.  He was concerned that the vehicle would crash and cause injuries.  Trooper Priest said that the vehicle did not stop, but "continued on," driving through the "gore," which Trooper Priest explained was the "hashed area in the middle of the roadway."  From the gore, the vehicle entered a turn lane and subsequently turned left into a flea market and stopped.  Weis was the driver.

{¶4}  After the conclusion of the state's case Weis made a Crim.R. 29 motion for acquittal.  The trial court denied the motion.  The court then convicted Weis of the charged marked lanes violation.  Weis appeals, raising three assignments of error, which we address collectively.

## II. Law and Analysis

{¶5}  Assignment of Error No. 1:

{¶6}  THE TRIAL COURT ERRED IN DENYING APPELLANT'S OHIO CRIM.R. 29 MOTION FOR ACQUITTAL AS APPELLEE FAILED TO ESTABLISH ALL ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT.

{¶7}  Assignment of Error No. 2:

{¶8}  APPELLANT'S CONVICTION MUST BE REVERSED AS IT IS NOT

---

1. The state also charged Weis with operating a vehicle while intoxicated and a seat belt violation.  Weis was found not guilty of those charges.  This opinion omits discussion of facts relevant to those charges because they are not at issue on appeal.

SUPPORTED BY SUFFICIENT EVIDENCE.

{¶9} Assignment of Error. No. 3:

{¶10} APPELLANT'S CONVICTION MUST BE REVERSED AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} In her first and second assignments of error, Weis argues that the trial court erred in denying her Crim.R. 29 motion and that the state's evidence was legally insufficient to permit the factfinder to convict her of a marked lanes violation. She argues that there was no evidence submitted indicating that the roadway in which she was operating the vehicle was divided into two or more clearly marked lanes. Weis argues that Trooper Priest's testimony that she was operating her motor vehicle "in the middle of the roadway" was insufficient to allow any rational trier of fact to have found her guilty beyond a reasonable doubt. For the same reasons, she argues in her third assignment of error that the factfinder lost its way in convicting her, causing a manifest miscarriage of justice.

## A. Standard of Review

{¶12} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶13} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶14} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶15} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

### B. Analysis of Marked Lanes Conviction

{¶16} R.C. 4511.33, "Rules for driving in marked lanes," provides in relevant part:

> Whenever any roadway has been divided into two or more
> clearly marked lanes for traffic * * * the following rules apply:

> A vehicle or trackless trolley shall be driven, as nearly as is
> practicable, entirely within a single lane or line of traffic and shall

not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

* * *

(4) Official traffic control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device.

"Traffic control device" means a "flagger, sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway, private road open to public travel * * *."  R.C. 4511.01(QQ).

{¶17}  When viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found Weis guilty of a marked lanes violation beyond a reasonable doubt.  Trooper Priest testified that he responded to a report of a vehicle traveling erratically and "left of center."  Consistent with this report, he observed Weis' vehicle on State Route 73 near the Interstate 71 interchange driving in the "middle of the roadway."  Trooper Priest's reference to "middle of the roadway" is commonly understood to mean driving left of the center-divider.  Furthermore, Trooper Priest testified that he was concerned that Weis would crash, and that after he turned on his lights Weis "continued on" through the gore, a hashed area in the middle of the roadway that is "no access" and where traffic is not permitted.  *See Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, ¶ 2; *State v. Taylor*, 4th Dist. Ross No. 13CA3419, 2016-Ohio-1231, ¶ 3, fn. 1.  When later questioned by Weis' counsel, Trooper Priest stated, "I mean she was driving in the center of the roadway, and it was two lanes that she crossed on 71."[2]

{¶18}  Weis argues that the state "presented no evidence as to the existence of clearly marked lanes."  It is true that Trooper Priest never *explicitly* stated that the lanes

---

2. Given Trooper Priest's other testimony, it appears that he misspoke and meant to say, "two lanes that she crossed on [State Route] *73*," not Interstate 71.

were *marked* lanes. However, Trooper Priest's testimony would be sufficient to permit a rational fact finder to conclude that the lanes were marked, that Weis failed to stay within her lane as nearly as practicable, and that she changed lanes without ascertaining the safety of such movement prior to making the movement – all in violation of R.C. 4511.33(A)(1). Specifically, the trial court could have found that Trooper Priest's testimony that Weis "continued on" from the "middle of the road" through the gore, and that "it was two lanes that she crossed on [State Route 73]," indicated that Weis drove over marked lanes in violation of R.C. 4511.33(A)(1). In particular, Trooper Priest's reference to "two lanes" implied the marking of lanes, as there would not have been "two lanes" if the lanes were not marked.

{¶19} We further conclude that the factfinder did not lose its way in convicting Weis. This is not the exceptional case where the evidence weighs heavily in favor of acquittal. Nor do we find that Weis' conviction resulted in a manifest miscarriage of justice. We overrule Weis' first, second, and third assignments of error.

{¶20} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.